# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| THOMAS THOMPSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Deputy Commissioner of Operations, )<br>Social Security Administration, )<br>)<br>Defendant. ) | Case No. 1:17-CV-00128-NCC |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Thomas Thompson ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 15) and Defendant has filed a brief in support of the Answer (Doc. 20). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

## I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on February 4, 2015 and February 13, 2015, respectively (Tr. 174-82, 207-17). Plaintiff was initially denied on March 13, 2015 (Tr. 102-13). Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ") on March 20, 2015 (Tr. 114-15). After a hearing, by decision dated September 23, 2016, the ALJ found Plaintiff not disabled (Tr. 23-38). In a decision dated July 10, 2017 the Appeals Council denied

Plaintiff's request for review (Tr. 1-7). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirement through March 31, 2014 (Tr. 28). The ALJ found Plaintiff has not engaged in substantial gainful activity since April 1, 2009, the alleged onset date (*Id.*). The ALJ further found Plaintiff has the severe impairments of degenerative joint disease of the bilateral hips, degenerative disc disease of the lumbar spine, and obesity, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 28-30).

After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform sedentary work[1] with the following limitations (Tr. 30). He can lift and carry 10 pounds occasionally and 10 pounds frequently (*Id.*). He can stand or walk 2 hours in an 8-hour workday, for 30 minutes at a time, and sit for 6 hours in an 8-hour workday, for 30 minutes at a time (*Id.*). He can occasionally climb stairs, but never climb ladders, ropes, or scaffolds, and he can occasionally stoop, crouch, kneel, or crawl (*Id.*). He should avoid unprotected heights and hazardous moving machinery (*Id.*). The ALJ found Plaintiff unable to perform any past relevant work but that there were jobs that exist in

---

[1] Sedentary work:

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a); 20 C.F.R. § 416.967(a).

significant numbers in the national economy that Plaintiff can perform including document preparer, administrative support worker, and cutter/paster (Tr. 33-34). Thus, the ALJ concluded that Plaintiff is not disabled (Tr. 33). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision (Doc. 15).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

3

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler,* 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff asserts that the Appeals Council's failure to consider additional evidence warrants remand (Doc.

15 at 11). Second, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence (*Id.* at 14). Because the Appeals Council erred in failing to consider additional material evidence, the Court will address that issue alone.

After a decision was issued by the ALJ, counsel submitted a Medical Source Statement – Mental from Dr. Jim Pang, Jr. ("Dr. Pang"), Plaintiff's psychiatrist, dated October 19, 2016 to the Appeals Council (Tr. 11-14). Dr. Pang noted that the time period covered by the opinion was 2015-2016 (Tr. 14). Dr. Pang indicated that Plaintiff's diagnoses include mood disorder and anxiety disorder and opined Plaintiff to be marked or moderately limited[2] in the areas of understanding and memory; sustained concentration and persistence; social interaction; and adaptation (Tr. 12-14). In its denial, the Appeals Council acknowledged that it received the document but determined that the additional evidence "does not relate to the period at issue" (Tr. 2). In so doing, the Appeals Council noted that the opinion was dated October 19, 2016, the ALJ decided Plaintiff's case through September 23, 2016, and that the evidence "does not affect the decision about whether you were disabled beginning on or before September 23, 2016" (*Id.*). The Appeals Council did not indicate that Dr. Pang's opinion included a statement regarding the time period it covered nor was the opinion included on the Appeals Council's exhibits list (*See* Tr. 1-5).

The Appeals Council must consider additional evidence that is new, material, and related to the period on or before the date of the ALJ's decision as if it was presented to the ALJ. 20 C.F.R. § 404.970(b) (effective to January 17, 2017); *Whitney v. Astrue*, 668 F.3d 1004, 1006 (8th Cir. 2012). In this case, the Appeals Council acknowledged receipt of the additional

---

[2] The form defined moderate limitation as "Individual is still able to function somewhat but would consistently have problems" and marked limitation as "Individual's ability to function is limited to a point that would seriously interfere with performance of work activity" (Tr. 12).

6

evidence, but did not consider it because it post-dated the ALJ decision (Tr. 2). However, the Appeals Council may be obligated to consider additional evidence that post-dates the ALJ decision, "if it relates to the claimant's condition on or before the ALJ's decision." *Cunningham v. Apfel*, 222 F.3d 496, 502 (8th Cir. 2012). Therefore, the additional evidence is tested for novelty and relatedness, not timing. The Appeals Council's failure to consider the additional evidence may be a basis for remand. *See Whitney*, 668 F.3d at 1006.

In this case, Defendant does not contend that the evidence is not new or merely cumulative of other evidence consider by the ALJ. Instead, Defendant appears to assert that Dr. Pang's opinion is not related to the relevant time period and is immaterial. Defendant first asserts that while Dr. Pang indicated that the period covered by his medical source statement was 2015-2016, the record shows that Plaintiff only saw Dr. Pang on two occasions in mid-2016 (Doc. 20 at 6 (citing Tr. 14, 520-23)). However, for this very reason, the opinion is related to the relevant time period. Dr. Pang saw Plaintiff on June 1, 2016 and July 13, 2016 for psychiatric care, both within the relevant period, and clearly indicated that his opinion related to the relevant time period (Tr. 14, 520-23). Defendant also asserts that the additional evidence is not material because, "even if considered with the ALJ's decision, the new evidence does not provide a basis to change the outcome of the decision" (Doc. 20 at 7). Indeed, to be material, there must be a reasonable likelihood that that the new evidence would have changed the ALJ's determination. *Woolf*, 3 F.3d at 1215. It is not this Court's duty to reweigh the evidence. *Bates v. Chater*, 54 F.3d 529, 531-32 (8th Cir. 1995). However, the Court must determine whether there is a reasonable likelihood that the ALJ's decision would be different in light of the additional evidence. *Woolf*, 3 F.3d at 1215.

7

In his decision, the ALJ determined that Plaintiff's depression, bipolar disorder, and anxiety do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and were, therefore, nonsevere (Tr. 29). In so doing, the ALJ noted that while Plaintiff reported suicidal thoughts and complained of mood swings, irritable moods, distractibility, racing thoughts, and anger outbursts in May 2015, he reported medication noncompliance, and after being prescribed Lithium, he generally exhibit normal mood, speech, and thought process (*Id.*). The ALJ also noted that "[a]s recently as July 2016, [Plaintiff] denied being bothered by little interest of pleasure in doing things and feeling down, depressed, or hopeless" (*Id.*). The ALJ also reviewed Plaintiff's activities of daily living, social functioning, and concentration, persistence and pace, finding no more than mild limitation in all three areas (*Id.*). Specifically, the ALJ noted that Plaintiff "reported he could cook simple meals, drive, socialize with family, [] play video games with his son for several hours at a time[,] . . . attend parent/teacher conferences, garden in pots, sit on the bank and fish[,] and play board games with his children" (*Id.*). The ALJ further indicated that Plaintiff had experienced no episodes of decompensation of extended duration (*Id.*). However, Dr. Pang's opinion directly contradicts these findings and, in light of Dr. Pang's opinion as well as the evidence already in the record, the Court cannot find that the ALJ's determination that Plaintiff's mental health impairments are nonsevere to be supported by substantial evidence. Therefore, there is a reasonably strong likelihood that the additional evidence would have changed the ALJ's decision.

At Step 2, the Commissioner must determine whether a claimant has a severe impairment. "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. While a claimant has the burden of showing a severe impairment that

8

severely limits his physical or mental ability to perform basic work activities, the burden "is not great" and "[t]he sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his] ability to work." *Caviness*, 250 F.3d at 605. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b).

First, Plaintiff applied for disability benefits alleging multiple impairments including the following mental health impairments: depression, memory problems, and anxiety (Tr. 212). *See cf. Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001) (observing that a failure to allege depression in an application for benefits is significant, even if the evidence of depression was later developed). Indeed, Plaintiff's own reports indicate the degree of limitation is more significant than as noted by the ALJ. For example, Plaintiff reported in a Function Report-Adult dated February 23, 2015 that he "rarely" goes outside in part because "lack of desire. Depressed, don't like being around people much anymore" (Tr. 228). He also noted that he is "unable to tolerate people anymore," that he does not handle stress or changes in his routine very well, and that he is "a hermit" (Tr. 229-31).

Second, although Plaintiff's mental health records are limited, Plaintiff sought care on multiple occasions beginning in May of 2015 with an inpatient hospitalization. *Cf. Lawson v. Colvin*, No. 4:13–CV–1361 SNLJ, 2014 WL 4269050, at *15 (E.D. Mo. Aug. 28, 2014) (finding the plaintiff not disabled when "[t]he record shows she neither sought nor received psychiatric treatment during the time of her alleged disability."). At a May 19, 2015 visit to establish care at the Family Counseling Center, the medical provider notes that Plaintiff "has been recently discharged from the First Steps Unit at Twin Rivers Regional Medical Center . . . for suicidal ideations" (Tr. 357). Indeed, while the hospital record appears to have significant gaps, Plaintiff

9

was seen at Twin Rivers Regional Medical Center for a psychological assessment in May of 2015 (Tr. 424). Plaintiff then saw providers at the Family Counseling Center, including a psychiatrist, for three visits. Plaintiff was prescribed psychotropic medication and, as noted by the ALJ, did not take the first medication prescribed because he could not afford it. However, Plaintiff's noncompliance, while clearly financially motivated, may also have been a result of his reported memory problems. *Cf. Pate–Fires v. Astrue*, 564 F.3d 935, 945-47 (8th Cir. 2009). Regardless, although Plaintiff reported "significant improvement" once actively taking a different medication, Dr. Erica Smith indicates that Plaintiff continued to have a Daily Living Activities (DLA-20)[3] score of 46, the same score he received upon initial screening (Tr. 351-359). According to another mental health provider at the practice, "DLA-20 is 46 which show deficits in the areas of health practices, managing time, managing money, family relationships, alcohol/drug use, leisure activities, productivity, coping skills, and behavior" (Tr. 359). Plaintiff appears to have discontinued treatment at the Family Counseling Center in June of 2015.

In June of 2016, Plaintiff saw Dr. Pang for a psychiatric evaluation and to establish care (Tr. 522). Dr. Pang diagnosed Plaintiff with major depressive disorder and anxiety disorder and started Plaintiff on medication (Tr. 522-23). Plaintiff saw Dr. Pang again in July of 2016 (Tr. 520-21). Again, the record appears to be incomplete, but it is clear that little change is noted between the June 2016 visit and the July 2016 visit (*See* 520-23). At both encounters, Dr. Pang indicated that Plaintiff had poor recent memory, sad and flat affect, obsessions, poor insight and judgment, and a worsening status (*Id.*).

---

[3] "The Daily Living Activities (DLA) Functional Assessment is a functional assessment . . . designed to assess what daily living areas are impacted by mental illness or disability." Willa S. Presmanes, Beyond Global Assessment of Functioning: Ensuring Valid Scores and Consistent Utilization for Healthcare Report Cards, https://www.thenationalcouncil.org/wp-content/uploads/2012/11/DLA-Sample.pdf (last visited June 4, 2018).

Third, the medical opinion evidence from Dr. Pang indicates that Plaintiff's mental health impairments are perhaps more limiting than as suggested by the ALJ. Dr. Pang found Plaintiff to be marked or moderately limited in all areas (Tr. 12-14). Specifically, Dr. Pang opined that Plaintiff was marked limited in the following areas: the ability to remember locations and work-like procedures; the ability to understand and remember very short and simple instructions; the ability to carry out detailed instructions; the ability to sustain an ordinary routine without special supervision; the ability to interact appropriately with the general public; the ability to ask simple questions or request assistance; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; the ability to respond appropriately to changes in the work setting; the ability to be aware of normal hazards and take appropriate precautions; the ability to travel in unfamiliar places or use public transportation; and the ability to set realistic goals or make plans independently of others (Tr. 12-13). Although Defendant urges the Court to either find the opinion unsupported by the record or inconsistent on its face, this is the only medical opinion that establishes Plaintiff's mental health capabilities and while these factors may impact the weight which the ALJ affords the opinion, the Court will not completely disregard it.

Therefore, because the medical record establishes that Plaintiff's mental health impairments constituted "more than a minimal impact to [his] ability to work," the Court finds that there is a reasonably strong likelihood that the additional evidence would have changed the ALJ's decision and it was error for the Appeals Council to disregard it. *Caviness*, 250 F.3d at 605. As such, the Court will remand this action to the Commissioner for further review.

## V. CONCLUSION

For the foregoing reasons, the Court finds this case should be reversed and remanded. On remand, the ALJ is directed to consider Dr. Pang's opinion and to give it appropriate weight when reformulating Plaintiff's RFC, further develop the record if necessary, and proceed with the next steps of the sequential evaluation process.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate Judgment will accompany this Order.

Dated this 26th day of July, 2018.

        /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE